Lucinda HAMMOND and
James L. Martin

v.

CREATIVE FINANCIAL PLANNING ORGANIZATION, INC., Stephen Dittman, Thomas K. Ellixson and the Honorable Charles B. Smith.

Civ. A. No. 91–2257.

United States District Court,
E.D. Pennsylvania.

Feb. 28, 1992.

---

**6.** Note that Rule 8 requires a statement of the claim *showing* an entitlement to relief.

Lucinda Hammond, pro se.

James L. Martin, pro se.

Ralph P. Bocchino, Howard M. Holmes, Samuel J. Arena, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This case involves a 42 U.S.C. § 1983 suit brought jointly by *pro se* plaintiffs Lucinda Hammond and James L. Martin against various defendants. Defendants have moved for a dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have responded to defendants' motions and have filed a motion for summary judgment. For the reasons discussed more fully below, plaintiffs will be granted leave to amend their complaint. The motion for summary judgment will be marked withdrawn as moot.

### (I) Facts

Lucinda Hammond brought suit in the Court of Common Pleas for Chester County, Judge Smith presiding, against her former employer, Creative Financial Planning Organization, Inc. ("Creative"). Her principal claim was wrongful discharge, but the complaint stated other causes of action as well. The action is on-going and James L. Martin apparently is acting as her attorney.[1] Hammond had a default judgment entered against Creative.

The Court's knowledge of the procedural history of the state court case is derived mainly from plaintiff's complaint in federal court, and his lengthy, convoluted filings. The Complaint does not paint a clear picture of the events leading up to this suit, but, as the Court understands it, Creative was given a certain period of time to respond to the default judgment during the summer of 1990. Apparently, this time period lapsed, after which one of Creative's attorney's, Thomas Ellixson, contacted Martin about re-opening the default judgment. Ellixson, who is working with another Creative attorney, Stephen Dittman, entered an appearance and Judge Smith re-opened the default judgment. At this point, our knowledge of the procedural posture of the state case ends.

---

1. In the Complaint, plaintiffs suggest that Martin is acting as Hammond's attorney in state court. *See, e.g.,* Complaint, paragraphs 37, 56, 57, 60. Defendant Dittman states in his brief that he is unclear about the capacity in which Martin is acting in the state action. Apparently, Martin has never entered an appearance, and signs all his filings "of counsel." As is stated more fully below, the Court has reason to doubt that James Martin is admitted to practice law in Pennsylvania. *See* Part IV(3)(b).

In their federal complaint, plaintiffs give a long, confusing account of how they had been checking the prothonotary's file periodically. Plaintiffs allege that Ellixson's entry of appearance was not filed at the time Ellixson claims, but instead was put in the file at a later time and back-dated in a fraudulent manner. Plaintiffs view this as a conspiracy to tamper with the state court record of the case in a manner designed to deprive Hammond and Martin of their "constitutional" rights.

Plaintiffs allege that Judge Smith opened the default judgment "without notice, hearing, and cause," and that doing so was "blatant disregard for plaintiffs [sic] federally secured rights against the arbitrary and capricious deprivation of a property interest...." Complaint, paragraph 51. Plaintiffs allege that "[i]n doing so, [Judge Smith] acted under color of state law to endorse the other federal defendants' sabotage of the state file at case no. 90–04564." *Id.* Plaintiffs also allege that "[t]he evidence suggests that defendant Smith did not bother to read the materials Hammond filed and made a series of preordained rulings consistent with what Dittman told Martin would occur during a phone conversation on July 17, 1990." Complaint, paragraph 53. Plaintiffs do not elaborate further about this mysterious phone call. As is discussed below, these allegations are insufficient to sustain a conspiracy theory.

While plaintiffs never explicitly say so, they apparently believe that Judge Smith relied on this supposedly fraudulent entry of appearance as grounds for reopening the default judgment. Plaintiffs therefore claim that Judge Smith is part of the "conspiracy" between state court defendant Creative and defense attorneys Ellixson and Dittman. Plaintiffs make sweeping allusions to "sabotage" (Complaint paragraphs 45, 51) and "misconduct" (Complaint paragraph 55) but Plaintiffs do not offer any concrete allegations of actions or communications by or between the "conspirators" which could lead a reasonable person to believe a conspiracy might exist.

## (II) Theories of the Parties

Hammond and Martin have filed a joint complaint. Both seem to be acting *pro se.* Martin does not allege in this federal complaint that he is acting as Hammond's attorney. Plaintiffs' principal theory is that defendants acted to deprive them of a constitutionally protected property interest in violation of 42 U.S.C. § 1983. In Hammond's case, the alleged property interest is the default judgment. In Martin's case, the alleged property interest is the fee he claims he is entitled to under a contingent fee agreement he negotiated with Hammond to pay for his representation of her in the state case.

In their complaint, plaintiffs state four causes of action:

a) violation of plaintiffs' Fourteenth Amendment due process rights;

b) violation of section 1983;

c) "federal equity: mandatory injunction and declaratory judgment" pursuant to 28 U.S.C. § 2201 (the declaratory judgment statute); and

d) state constitutional claims under a pendant jurisdiction theory.

Plaintiffs seek both damages and injunctive relief. Defendants have responded in three separate motions to dismiss. Defendants Creative and Ellixson have filed together, and defendants Dittman and Smith have each filed their own motion. The Court will respond to these motions collectively since they all request the same relief. As part of their response to these motions to dismiss, plaintiffs move the Court to treat defendants' motions as motions for summary judgment. Also, Martin moves for summary judgment. Rather than outline all of defendants' arguments now, I will incorporate most of their points into my analysis below. Two of the three defendant motions request Rule 11 sanctions in the form of attorneys fees and costs.

## (III) Standard of Review

The Third Circuit has articulated the 12(b)(6) standard as follows: "[t]he court is reviewing the dismissal of the complaint for failure to state a claim on which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

The applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3rd Cir.1989).

### (IV) Analysis

### (A) *Violation of 14th Amendment Rights*

■ The Supreme Court has never held that there is an implied private right of action against a state, or a state actor, under the Fourteenth Amendment. The Supreme Court has enunciated an implied right of action under the Fourth and Fifth Amendments, but has gone no further. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment implied right of action); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment implied right of action). The Court need not break new legal ground by deciding whether there is an implied right of action under the Fourteenth Amendment because 42 U.S.C. § 1983 provides a remedy for violations of these rights. *"Bivens* teaches that the existence of an effective and substantial federal statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy on [his] behalf." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3rd Cir.1980), *cert. denied sub nom, Mark–Gardner Assocs., Inc. v. Bensalem Twp.*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Accordingly, plaintiffs' first theory does not present a cause of action upon which relief can be granted.

### (B) *Section 1983*

#### (1) Elements of Section 1983 Case

■ In a Section 1983 case, a plaintiff must make pleadings that satisfy two requirements. First, a plaintiff must allege that the conduct complained of was committed by a person acting under color of state law. Second, a plaintiff must allege that this conduct deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In satisfying this second requirement, it is not enough for a plaintiff to show that she suffered a deprivation. *Id.* 451 U.S. at 537. A plaintiff must allege that she was deprived of a constitutionally protected interest without due process of law. *Id.*

#### (2) State Action

The first requirement when pursuing a Section 1983 suit is to allege that the offending conduct constitutes state action. Here, plaintiffs allege that the private parties conspired with Judge Smith, a state actor, in perpetrating the alleged violations of the plaintiffs' rights. Plaintiffs fail to satisfy the state action requirement because they do not plead their conspiracy theory with sufficient specificity.

#### (a) *Judicial Immunity*

■ The law is clear that judges have absolute immunity from suits where damages are sought. This absolute immunity from suit can only be overcome in two sets of circumstances. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, —— U.S. ——, ——, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (citations omitted). Absolute judicial immunity cannot be overcome by allegations of bad faith or malice. *Id.* Whether a judge's act is a "judicial" act relates to the nature of the act itself. *Id.* One must look to see whether the act is a function normally performed by judges and whether the parties dealt with the judge in his judicial capacity. *Id.* Judge Smith had jurisdiction over Hammond's case and the opening of the default judgment was a judicial act. Judge Smith is immune from suit for damages for his actions in state court.

■ A judge is not immune from suit where the plaintiff seeks prospective relief rather than damages. *See Pulliam v. Al-*

*len,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1983). Also, the federal anti-injunction statute, 28 U.S.C. § 2283, does not bar a plaintiff from filing a Section 1983 suit in which the plaintiff requests that the federal court enjoin state court proceedings. *See Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1971). In carving out an exception to the anti-injunction statute for Section 1983 suits, the Supreme Court was quick to note that traditional principles of equity, comity, and federalism remain fully applicable:

> In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in *Younger v. Harris,* 401 U.S. 37, [91 S.Ct. 746, 27 L.Ed.2d 669,] and its companion cases.... Today we decide only that the District Court in this case was in error in holding that, because of the anti-injunction statute, it was absolutely without power in this § 1983 action to enjoin a proceeding pending in a state court under any circumstances whatsoever.

*Mitchum,* 407 U.S. at 243, 92 S.Ct. at 2162. Earlier in the *Mitchum* opinion, the Court summarized its opinion in *Younger* as stating that a federal court's injunctive intervention in a pending state court prosecution is only warranted in certain exceptional circumstances: (1) where irreparable injury is both great and immediate, (2) where the state law is flagrantly and patently violative of express constitutional prohibitions, or (3) where there is a showing of bad faith, harassment, or other unusual circumstances that would call for equitable relief. *Id.* at 230, 92 S.Ct. at 2155–56. *Younger* arose in a criminal context, but its rationale has been applied to an ever increasing range of cases. This expansion of the *Younger* doctrine has culminated with its application to a civil case. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

As will be discussed more fully below, I will allow plaintiffs the opportunity to amend their complaint on the issue of conspiracy. Because the complaint contains allusions to conspiracy that include Judge Smith, and because I can conceive of situations (albeit limited ones) where conspiratorial conduct might rise to the level of bad faith or harassment as defined in *Younger,* I conclude that I must allow plaintiffs the opportunity to amend the complaint as to Judge Smith.

#### (b) *Conspiracy*

■ If a plaintiff alleges that private actors conspired with a state actor to deprive plaintiff of her constitutional rights in violation of Section 1983, the plaintiff has made a sufficient allegation of state action. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). The requisite state action is present even if the conspirator who is a state actor is himself immune from suit. *Id.* at 28, 101 S.Ct. at 186. Therefore, defendants Creative, Ellixson, and Dittman could be held liable under a Section 1983 theory even if Judge Smith were immune from suit if Plaintiffs were to properly plead a conspiracy theory. Plaintiffs have not done so.

■ It is settled Third Circuit law that a civil rights complaint under Section 1983 must set forth with factual specificity the conduct of the defendants alleged to have harmed the plaintiff. *Darr v. Wolfe,* 767 F.2d 79, 80 (3rd Cir.1985). When the actions of a judge are supplying the necessary state action, the allegations must be especially specific in order that purely private action may not be converted into state action merely by including the judge as a defendant in the action. *Id.* at 81.

■ The elements of a conspiracy are a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3rd Cir.1974). The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events. *Id.* Viewing

the complaint in a light most favorable to plaintiffs, it is hard to see how one could find that plaintiffs have satisfied the requirement for specific factual allegations. Plaintiffs' narration of the "facts" as to Ellixson and Dittman's actions is sketchy, episodic, and uneven. They jump from one isolated event to another and expect the reader to fill in the gaps with an implicit finding of "sabotage" and "misconduct." Plaintiffs never state how one event is related to another, or how the whole narration proves conspiracy—a word plaintiffs never use. In effect, plaintiffs ask the Court to find specific factual allegations of conspiracy simply because the complaint contains general facts and the word "sabotage."

Plaintiffs allege that "[i]n the interim, Ellixson, with Dittman, sabotaged the default judgment. Dittman inserted an entry of appearance, dated July 6, 1990, in the original file to make it seem like the Deputy Prothonotary overlooked the entry of appearance when the judgment was entered on July 13, 1990." Complaint paragraph 45. Assuming for the sake of argument that this allegation is a sufficiently specific pleading of conspiracy, plaintiffs never explain how Judge Smith acted in concert with the "conspirators." In paragraph 51 of the complaint, plaintiffs allege that "[d]espite the blatant disregard for plaintiffs federally secured rights against the arbitrary an capricious deprivation of a property interest without notice, hearing, and cause, defendant Charles B. Smith opened the default judgment on 3–1–91 that had been properly entered. In so doing, he acted under color of state law to endorse the other federal defendants' sabotage of the state file at case no. 90–04564." This statement is an insufficient pleading of conspiracy. Plaintiffs do not allege that Judge Smith had knowledge of Ellixson and Dittman's "conspiratorial actions," and plaintiffs do not make any factual allegations that Judge Smith knowingly acted in furtherance of the "conspiracy." In short, plaintiffs do not sufficiently plead a conspiracy between a state actor and private actors.

Other Circuits have dealt with cases that are quite similar to the present case. According to the Seventh Circuit, mere errors or irregularities in the state court proceedings are not sufficient to show a purposeful conspiracy to deny plaintiff due process. *Skolnick v. Spolar*, 317 F.2d 857, 859 (7th Cir.1963), *cert. denied*, 375 U.S. 904, 84 S.Ct. 195, 11 L.Ed.2d 145 (1963). In 1988, the Ninth Circuit dealt with a case similar to Hammond and Martin's, *Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 1988), *cert. denied*, 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988). In *Schucker*, the state judge ordered Mr. Schucker to comply with prior judgments of the court. Approximately one month later, the opposing party moved the court to order Schucker to show cause why he had not complied with the court order. Jurisdiction was one of the issues in the motion, and the state court judge accepted the arguments of Schucker's opponents. Schucker filed a section 1983 action in federal court. The district court dismissed Schucker's complaint stating that a mere invocation of the state judicial process does not convert a private party's action into state action even if the plaintiff alleges a "conspiracy" between private parties and the judge. *Id.* at 1204–05. The Ninth Circuit upheld the district court. Schucker's theories are almost the same as Hammond and Martin's theories in the instant case. Therefore, the Ninth Circuit's reasoning is worth repeating in its entirety.

> Although we recognize that an individual may bring a section 1983 action against private parties that conspire with a state actor immune from civil liability, "merely resorting to the courts and being on the winning side of a lawsuit does not make a [private] party a joint actor with the judge." Schucker's conclusory allegations that Judge Jourdane conspired with the law firms are insufficient to support his section 1983 claim. Invoking state legal procedures does not constitute "joint participation" or "conspiracy" with state officials sufficient to satisfy section 1983's state action requirement.

*Schucker*, 846 F.2d at 1205 (citations omitted).

■ Since Ellixson and Dittman are not state actors in their own right, *see Polk County v. Dodson*, 454 U.S. 312, 318, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509 (1981), and plaintiffs have failed to properly allege a conspiracy between these two private actors and Judge Smith, the complaint fails the state action requirement of a Section 1983 suit. Under the Third Circuit's holding in *Darr*, the Court must give plaintiffs an opportunity to amend their complaint to include specific factual allegations of conspiracy if this is the only grounds for dismissal. *Darr v. Wolfe*, 767 F.2d at 81. The Court's strongest reason for dismissing the Complaint is the insufficiency of the conspiracy allegations, therefore the Court must afford plaintiffs the opportunity to amend.

#### (3) Deprivation of Protected Interest

The second requirement of a Section 1983 action is a deprivation of a constitutionally protected interest without due process of law.

#### (a) *Property*

Plaintiffs allege that the opening of the default judgment deprived them of a constitutionally protected property interest. This appears to be a novel issue which the Court need not address at this time because the complaint will be dismissed on other grounds.

#### (b) *Standing of James Martin*

■ In order to have standing, James Martin must allege that he has suffered an injury in fact, that the injury was caused by the defendants' actions, and that the injury is likely to be redressed by a favorable decision. *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 86–7 (3rd Cir.1991) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

■ Martin claims that he is representing Hammond in the state court action pursuant to a contingent fee agreement. He further claims that defendants' actions deprived him a his fee and that this constitutes a deprivation of a protected property interest without due process of law. Martin never asserts, however, that he is a member of the bar duly licensed to practice law in the Commonwealth of Pennsylvania. The Court has reason to doubt that Martin is admitted to practice in Pennsylvania on either a permanent or temporary basis. *See e.g. Martin v. Townsend*, 1990 WL 138546 (D.N.J.1990); *Martin v. Zook*, 1988 WL 33919 (E.D.Pa.1988); *In re Application of James L. Martin*, 583 A.2d 660 (Del.Super.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991). If Martin is practicing without a license, his agreement with Hammond would be unenforceable. *See e.g., Waychoff v. Waychoff*, 309 Pa. 300, 163 A. 670 (1932) (agreement whereby a layman receives attorney fees is void as a contract against public policy); *see also Dauphin County Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976) (The practice of law by persons who are not authorized to do so by the Supreme Court is forbidden); 42 Pa.C.S.A. § 2524.[2]

If the contingent fee agreement were unenforceable, Martin would not have any standing in this suit, even if the Court were to rule that a default judgment is a protected property interest. Therefore, that portion of the complaint pertaining to James Martin will be dismissed on the standing issue as well as the conspiracy issue. As case law requires, Martin will be allowed an opportunity to amend the complaint to plead that he is a licensed Pennsylvania attorney.

---

**2.** 42 Pa.C.S.A. § 2524 provides:

Any person who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law ... commits a misdemeanor of the third degree.

**1252**

(C) *"Federal Equity" and Declaratory Judgment*

 Plaintiffs entitle their third claim, "Federal Equity: Mandatory Injunction and Declaratory Judgment." Plaintiffs request that, pursuant to the Declaratory Judgment Act found at 28 U.S.C. § 2201, the Court take over control of the whole state case, enjoin Judge Smith from entering any decisions, and hold a hearing on damages. Ignoring for a moment possible issues of comity and abstention doctrine that this claim raises, plaintiffs' declaratory judgment claim is facially invalid. The first sentence of the statute reads, "[i]n a case of actual controversy within its jurisdiction ... a court of the United States ... may declare rights an other legal relations ... of any interested party...." 28 U.S.C. § 2201. As is explained above, plaintiffs have failed to state a cause of action upon which relief can be granted. Therefore, the Court has no authority to act under 28 U.S.C. § 2201 at this time.

(D) *State Claims*

 Plaintiffs make claims for relief under various Pennsylvania constitutional provisions asserting that the Court has jurisdiction under the doctrine of pendant jurisdiction. However, since plaintiffs have failed to show that the court has subject matter jurisdiction over this case, the court cannot entertain state law claims by pendant jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The doctrine of pendant and ancillary jurisdiction is now codified at 28 U.S.C. § 1367 under the name "supplemental jurisdiction." The statute parallels *Gibbs* in requiring that the district court have original jurisdiction over the case in which pendant state claims are alleged. 28 U.S.C. § 1367(a). As with the injunction claim, this analysis depends on the sufficiency of the amended complaint, if one is filed.

(E) *Rule 11 Sanctions*

Since plaintiffs will be afforded an opportunity to amend their complaint, the mo-

tions for Rule 11 sanctions need not be addressed.

(V) Ruling

Defendants' motions to dismiss will be granted with leave for plaintiffs to amend their complaint. Plaintiffs' motion for summary judgment will be marked withdrawn as moot.